UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                               Case No: 08-20384-6
                                                               Honorable Victoria A. Roberts

WANDA HENLEY,

    Defendant.
_____/

## ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant's Amended Motion in Limine. (Doc. 112). Defendant moves the Court to preclude the admission of two checks into evidence because they are irrelevant and unfairly prejudicial.

Defendant's motion is **DENIED**.

### II. BACKGROUND

Defendant Wanda Henley and co-defendants Jonathone Johnson, Chaka Powell, Erica Walters, Aronzo Johnson, and Nyesha Noaks, are charged in a 54-count Indictment filed July 16, 2008. The indictment was dismissed as to Aronzo Johnson, and Erica Walters pled guilty and awaits sentencing. Henley is charged with 30 counts of Wire Fraud, in violation of 18 U.S.C. § 1343. Henley, a licensed real estate appraiser, is alleged to have participated in a mortgage fraud scheme in the metro Detroit area, from 2003 to 2005. The joint trial for Henley and the remaining co-defendants is scheduled to begin on January 6, 2011. (Doc. 117).

1

The Government says that co-defendant Johnson purchased houses, often in foreclosure, and paid Henley to inflate appraisals in order to increase the apparent value of the houses. The houses sold quickly for a large profit, due in part to the inflated appraisals.

## III.  ANALYSIS

### A.  Relevance

Defendant says that the Government intends to introduce checks at trial as proof of payments to Henley from co-defendant Johnson for inflated appraisals. Henley objects to the admission of an $8,000 check dated June 18, 2003 and a $5,000 check dated June 23, 2003. These checks were written on the account of 3 J Solutions, a business owned by co-defendant Johnson; both were payable to Progressive Women's Ministry and Realty.

Although Henley's connection to the Progressive Women's Ministry and Realty is not explained in the parties' briefs, Henley does not dispute the relevancy of the checks on the basis that they were not payments to her. Instead, Henley says the checks are not relevant because both were written and cashed approximately four months before the Government alleges she conducted any appraisals in connection with the scheme. Henley is mistaken.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Generally, "[a]ll relevant evidence is admissible . . . . Evidence which is not relevant is not admissible."

Fed. R. Evid. 402.

Any evidence admitted against Henley must be relevant to proving the charge of wire fraud. "A defendant commits wire fraud when, 'having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by false means or fraudulent pretenses, representations, or promises,' that defendant 'transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . . .'" *U.S. v. Mobley,* 2010 WL 3340364, at *6 (6th Cir. 2010) (citing 18 U.S.C. § 1343). Wire fraud requires proof of three elements: (1) "defendant devised or willfully participated in a scheme to defraud," (2) "he used or caused to be used an interstate wire communication 'in furtherance of the scheme,'" and (3) "he intended 'to deprive a victim of money or property.'" *U.S. v. Faulkenberry,* 614 F.3d 573, 581 (6th Cir. 2010) (citing *U.S. v. Prince,* 214 F.3d 740, 748 (6th Cir. 2000)).

The indictment alleges that part of the scheme was that co-defendant Johnson "would purchase houses . . . [and] get them appraised by Wanda Henley at values far in excess of the prices at which they were purchased (or use forged appraisals); and then sell them within a short period of time to individuals at large profit." (Indictment ¶ 5). The indictment alleges that Henley was paid to include false information in the appraisals, or exclude negative information about the properties, to increase the market value of the houses. (Indictment ¶¶ 9, 11). The Government alleges that these inflated appraisals caused financial institutions to wire funds from outside the State of Michigan to title companies in the state, for disbursement during the real estate closings.

The indictment says the scheme took place from June 2003 to September 2005. The disputed checks are dated June 18, 2003 and June 23, 2003, within the time frame of the alleged scheme. The closing date for the first loan was June 20, 2003. "The appraisal supporting that loan, dated May 29, 2003, was signed by 'Gary Tyson' of 'Michigan Appraisal and Consult.'" (Gov't's Resp. at 3). According to the Government, Michigan Appraisal and Consult is a name under which Henley did business, and Gary Tyson's signature was forged.

The checks tend to show a connection between Henley and co-defendant Johnson. They are relevant to prove the first element of wire fraud, that Henley wilfully participated in the scheme, because they tend to show she was paid for her participation. These are facts of consequence in the wire fraud prosecution, and they are made more probable by the checks.

Further, the fact that Henley was not charged with wire fraud in connection with the specific sale that took place on June 20, 2003, does not mean the checks are not relevant. The Government contends the payments, which were prior to Henley conducting any appraisals for the scheme, were inducement for Henley's later omissions and misrepresentations in the appraisals, and are part of a pattern of payments for fraudulent appraisals.

It is a question for the jury, whether these checks are actually payments to Henley from co-defendant Johnson for fraudulent appraisals, but the checks are certainly relevant to the Government's claim that Henley participated in a scheme that amounted to several counts of wire fraud.

4

**B. Prejudice**

Henley says that even if the checks are relevant, their probative value is outweighed by the likelihood that they will be unfairly prejudicial, and confusing or misleading to the jury. The Court is not persuaded.

Rule 403 provides that even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." "The district court has broad discretion in balancing probative value against potential prejudicial impact." *U.S. v. Feinman,* 930 F.2d 495, 499 (6th Cir. 1991).

Henley says that in light of the temporal gap between when the checks were issued and cashed and the date of any of her alleged criminal acts, the jury can only use the evidence to speculate whether the checks were related to the alleged inflated appraisals. However, Rule 403 operates only to exclude evidence "when it is likely that the jury will be moved by a piece of the evidence in a manner that is somehow unfair or inappropriate." *In re Air Crash Disaster,* 86 F.3d 498, 538 (6th Cir. 1996). While the jury may consider whether the checks are related to the alleged inflated appraisals by Defendant, and this consideration of the checks may be prejudicial to Henley, this prejudice is not unfair or inappropriate. This is simply prejudice that results when any evidence is admitted against a defendant. The inferences drawn from these checks may help or hurt Henley's case, but either way their probative value is not outweighed by unfair prejudice; and the dates of the checks are not so confusing or misleading that the jury should not consider them.

Finally, Henley claims that the admission of this evidence would result in a verdict

based on juror speculation in violation of her Fifth Amendment Due Process right. This argument is without merit. A verdict based on a jury's consideration of the significance and meaning of the evidence, including the checks, will not be an unfair verdict based on speculation or a deprivation of due process.

## IV. CONCLUSION

Defendant's Motion in Limine is **DENIED.**

**IT IS ORDERED.**

                                        s/Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated: October 25, 2010

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 25, 2010.
>
> s/Linda Vertriest
> Deputy Clerk